Thank you, good morning. Are we dividing time? Are you dividing time? Yes, Your Honor. I'd like to tell you how we're planning to do that. So, how many minutes are you going? There are three. Seven minutes is what we propose. I'm Michael Nance, representing Miguel Arce Flores. Seven minutes for myself. We'd like to reserve a total of two minutes for rebuttal. Mr. Martin will speak on behalf of Morbella Mondragon for a couple of minutes. Let's put seven minutes on the clock so we can keep this straight. And then Mr. Carroll will take four minutes approximately to speak on behalf of... I'm not sure that math adds up, but you have 15 minutes total. All right, thank you. With respect to Miguel Arce Flores, this is a troubling case involving an express credibility finding about the government's critical witness, on whom it depended almost entirely to make its case under Section 3553A for an above guideline upward variance. The court expressly found that this witness, this MCR, on multiple occasions made allegations that were untrue that represented expressions of anger or vengefulness. Her testimony did not meet a clear and convincing standard of proof regarding the most serious aspect of the case, that being whether Miguel was accountable for her serious physical injury, i.e. that he had committed these claims of rampant sexual, physical, and emotional abuse and deprivation against MCR and her teenage cousin, BZ. The court also said that there was a great deal of ambiguity regarding the evidence. Wasn't it the court's function to weigh all of those considerations and then determine what evidence to believe and what evidence to discard? And didn't the court do that? Well, the court made a stab at it. We feel that there was a procedural problem here. Essentially, there's a 40-month upward variance of a sentence that Miguel receives. The variance is based in large part on the very word of this very same discredited witness, MCR. Factual findings have to be logical, plausible, and supported in the record. The court's factual findings, we would submit, were implausible in light of and being inconsistent with the earlier credibility finding. Well, that's really kind of a clearer attack on the facts that underlie whether the sentence was substantively reasonable. I'm not sure I understand. I think the presentation has been made to us that there's procedural error here because that's an easier standard to challenge on, but I really don't understand the procedural error. There's no question, but the judge considered the various factors put forward, including defendant's difficult childhood and life and so forth, and the question as to whether the testimony that was offered could be entirely relied upon. All that was being considered. Indeed, you've just cited to us the district court's consideration of it. So I'm just kind of mystified as to what the procedural error is. I understand the potential quarrel with the substantive reasonableness of the sentence, but the problem there is the standard is highly differential. And so explain to me why this is procedural error and it's not something we should judge as based on substance. Well, it's difficult, I think, to determine how much of the court's reasoning in the end was based on the credibility of a witness that it already discounted. Without the witness, the proof fails absolutely. With the witness, we submit. But that's still not procedural error. The judge plainly considered what you're arguing he misconsidered. But that's a different question. The procedural argument, as I understand it, is the district court didn't consider what it was supposed to consider. And I see him going through exactly the same things you're talking about. Well, there was this very negative pall hanging over the case, even after he made his ruling. I mean, we had a long hearing on whether this, over this whole issue of serious physical injury, and the court . . . Let me try to change direction. Because I'm still not hearing that as being a procedural error. So let me try it this way. The judge ultimately says this doesn't fit the usual alien smuggling case. And heaven knows we get a lot of alien smuggling cases and coyotes and people being taken across the border and taking somebody else's cousin and so forth. And here, what I hear the district court saying is that here's somebody who's taken over for the purpose of exploitation. Now, the level of exploitation may be in dispute. But it's plain to me that the district court concluded that this girl was taken advantage of in a serious way, at least economically. And that doesn't seem to be a clearly erroneous factual determination. Well, if that's the case, what is it more that I'm supposed to be looking at?  Let's talk about the degree of the departure. With the enhancement that he denied, if that had applied, the range would have been 33 to 41 months. He denied that enhancement based on the lack of a clear and convincing showing of that element. That takes the range down to 21 to 27 months. Then he comes back and applies 3553A factors, relying in large part upon the same witness, just to put the time back on there. I've seen that before. It happens. It's just a real oddity. And it's even more odd because the government, even after the ruling, continued to argue, continued to remind the court of all this sexual abuse. And they've done it in the appeal. I went through their briefing. It's about seven pages of descriptions on how horrible the life in this household was. If it's so inconsequential and so irrelevant, why do they keep talking about it? We've touched on another issue. I think maybe this does impact both due process and procedural aspects of this. That is, there's really no logical reason, if due process is the driving concern, that there should be dual standards, that we can consider the evidence for one purpose. We're going to hold it to a higher standard for purposes of imposing an enhancement because of a disproportionate impact. And even though the impact would be equally disproportionate for upward variance purposes, we're only going to apply the lesser standard, the preponderance standard. That's, I mean, I've looked for cases that directly address that. I don't find any. Not only in the system. We have a reasonable doubt standard for conviction and let a sentencing judge consider all sorts of things based on a lower standard. Sentencing is different. Well, and in the Treadwell example that I did cite, clear and convincing is sometimes appropriate where there's a disproportionate impact. There is such a thing here. And the other aspect of that is that the court's stated reasons for this upward variance, if true, would constitute uncharged crimes. Namely, theft of wages. How about manual, this is awkward to say, but I'll say it, manual non-consensual vaginal inspections. That was one of the reasons stated. That's a crime. That's forcible rape, basically. But isn't the sentencing judge can always consider relevant conduct even if it constitutes uncharged or acquitted offenses? Yes, he can. But in that example, it's supposed to be by a clear and convincing standard. Treadwell tells us that, this uncharged criminal conduct. And yet he's citing that. He's relying almost wholly on MCR's word for this. So that's a clear-cut example. Treadwell, just to remind you, distinguishes conduct that was an inherent part of the conviction from that that's uncharged. And essentially, if this MCR is angry and vengeful enough to invent sexual misconduct claims, why would she hesitate to embellish a claim that the defendants took all of her money or defamed her at her church or tried to extort more money from her? Counsel, you've exceeded your time. You're seven minutes. You're at eight minutes and 54 seconds. So we'll hear from the next counsel. Thank you. How much time? I'll try to limit it to just three minutes, Your Honor. Three minutes on the clock, please. Thank you, Your Honor. Dennis Carroll, appearing on behalf of Angel Sandoval Mondragon. And I want to just touch on one of the procedural errors that was raised in our brief, specifically the court's wholesale refusal or dismissal of the 3553A factor, the history and characteristics of the defendants, specifically the extreme poverty that they all suffered during their childhood. And I think there can be no dispute under the facts of this case and what was contained in the pre-sentence report that the childhood circumstances that particularly my client and Marbella Sandoval Mondragon suffered was extreme. And I believe it also applies to Miguel Arce Flores as well. But why do you say the district court didn't give it sufficient consideration? Well, because the court said it basically does not apply in these – well, basically it said it will not consider these sorts of cases. But it said it usually exists, right? Right. And I'll quote the court. The court stated at page 445 of the transcript, almost without exception anyone in federal court has suffered a horrible childhood, to paraphrase the rest of it. So by citing that reason, the court is basically excluding the history and characteristics of the defendant. Well, there's a difference between not considering something and considering and deciding not to give it weight. In my mind, the latter is a substantive evaluation. The former is procedural. He touched the base. He just decided it didn't count for very much. How does that make that a procedural violation? I agree with the court's concern of distinction, but I don't think that it applies in this case because the court looked at the base, decided he didn't have to touch it, and then kept running because the court said, well, this is true in all criminal cases in federal court. Therefore, I'm not – Well, it's not outside the heartland. In other words, it's nothing that takes it outside the heartland of cases that the court sees. That's kind of how I interpreted the court's words. Well, I don't think the court said that. No. But I think then the court committed error if it found that because these were undisputed, extreme facts regarding the terrible childhood neglect. But you had the substantive reasonableness land at that point. I agree. If the court did consider it and say, well, it just doesn't apply because I don't think the court did because it said, almost without exception, everyone has a terrible childhood in federal court, and therefore I'm not going to consider it. The other reason the court rejected the extreme childhood neglect statutory factor was because the case involved financial gain. And I would suggest that that is not supported by the case law or the statute at all. It removes that 3553A factor from virtually every federal criminal case because, frankly, most federal criminal cases involve some element of financial gain. Drug cases, fraud cases, a lot of immigration cases involve some kind of financial gain. And the court stated, well, I'm not going to consider your extreme childhood neglect because this case involved financial gain. And the extreme childhood neglect was connected to the facts of the case here. It provided cultural context for why, from our client's perspective, having a 14-year-old contribute to the family expenses and things like that is perfectly normal, considering their circumstances. You're kind of out of time. Let me pose a specific question. Can you give me a case authority that identifies the problem you've described as being a procedural error as opposed to the misweighing for substantive reasonableness? Well, I think United States v. Cardi requires the trial court to consider non-frivolous 3553A factors. That's not answering my question. At such a high level of generality, it's not helpful. Because there's no doubt that the judge was aware. He recited the argument. Can you give me a precedent that says the judge's awareness and discussion by saying, I don't think that counts for anything here, is a procedural error? I don't have a case in mind. But if I can just provide an example. If the court said you presented an argument regarding the horrible childhood abuse, but it's Tuesday and I'm not going to consider it on Tuesdays, then this court would find that. But he didn't say that. I agree. But I would suggest the reasons he cited were equally wrong. All right, counsel. Thank you. You've exceeded your time. Good morning. I'll only take one minute. I'm only going to address the waiver issue and then I'll submit the matter on the briefs. May it please the court, counsel.  The credibility issue was cleared before the district court. It's in the record that this court has. The Pucci case that I submitted in a supplemental citation indicates that the question is not only if the matter was not raised in the opening brief, but also if it wasn't raised as an issue before the district court. And it was an issue before the district court here. And I would only finish by saying that even if the Pucci case doesn't apply, if that's what this court finds, I would point the courts to the 33 pages of a factual recitation in the government's brief, talking about things that are still very hotly contested and simply indicate I think that the government invited a response and that for this reason my reply brief should not be stricken. Thank you. Who do you represent? Marbella Sandoval. Marbella. Okay. Thank you. Thank you. We need scorecards. We'll hear from the government. Good morning. Good morning. Charlene Kosky for the United States. May it please the court. The district court in this case imposed an above guideline, well imposed above guideline sentences because it found the crime fell far outside the heartland of the typical alien harboring case. Even the facts admitted in the plea agreement are sufficient to support that conclusion. The plea agreement states that the appellants conspired to bring a vulnerable 14-year-old girl to the United States and used her essentially as an indentured servant. Based on even just those admitted facts, the sentences are reasonable. On appeal, Miguel's counsel attacks the victim's credibility, but in doing so ignores the extensive corroborating evidence that was before the district court. Before I go through that evidence, I also just want to emphasize that the court didn't find that MCR had been vindictive or lied about things. MCR actually said that she had done that as she testified. It was acknowledged and all the parties understood that there were portions of her testimony in which she admitted she lied about this because she was angry and she wanted to get revenge. So I wouldn't characterize that as him finding that that was what her testimony was. It's just summarizing the testimony that was before the court and the evidence that was before the court. But some of the corroborating evidence introduced in this case included the false identification documents found in the defendant's residence. Monica, one of the co-defendants in an interview with law enforcement, admitted when asked about vaginal exams that Marbella looked at them to see if the girls were having sex. Medical records regarding MCR's abortion recovered from Miguel and Marbella's residence. Payment cards from MCR's factory jobs. Uncashed checks from factory jobs. State employment records showing that MCR's work history. Grand jury testimony of Torres that MCR had told him bad things were happening, including that a shadow came into the room at night and hurt BZ, her cousin. Torres also testified that MCR worked in his house for about three months. Miguel and Marbella negotiated the terms and the plea agreement says that she was never paid for that work. Pastor Delgado's grand jury testimony, he testified that MCR told him Miguel abused her and her cousin physically and that Marbella made them steal money from laundromats. Delgado's grand jury testimony also showed that when MCR returned from the United States, she told him about the harassment and he saw a document saying that MCR owed the defendants thousands of dollars. There were wire receipts, collaborating portions of her testimony. There was an envelope recovered from the defendant's residence that included letters and other documents related to MCR. There was the tithing book in which MCR's payments to Miguel were recorded. Detective Bruno authenticated many of the documents that were introduced and also testified about her investigation into MCR's claims, including why in certain cases some of the documents and records weren't available. There are different kinds of exploitation and I want to separate them for this question, starting with the financial. And there was evidence of financial exploitation and that's one of the things that appeared to influence the court, but I'm not sure that's a reason for taking these offenses outside what ordinarily is the case with regard to alien smuggling. Most alien smuggling involves people being paid for the point of smuggling. They're in it for the money. In this case, it's kind of in it for money in a different form, but how is that all that different? Well, the court did not vary upward because of the financial gain. The comments that the court made about financial gain were in response to defendants' arguments, and I believe they were Miguel's in particular, that he was only following God's law when he did all these things and he said that is inconsistent with the plea agreement and it's also contrary, which also in the plea agreement says that you did these for financial gain. Indeed, the plea agreement even cites the crime for the purpose of financial gain. Right. That's not that different. No. So the court actually said that the reasons it was varying upward were because of the abusive nature of what happened here and he said that his reasons were the fact that they recruited her, facilitated her entry, and once she arrived, directed her to find work and then controlled how much she worked, that they controlled her earnings, that they obtained false documents to allow her to work illegally even though she was only 14 years old, that they distributed personal information about her, including about her abortion, in order to harm her, that they continued to harass her about the Coyote fees and the money they say that she owed for living expenses, that there were physical exams conducted on the victims, and that there was a lasting impact on MCR. All of those factors, those were the actual reasons that the court gave for it varying upward. And most of those are supported by the plea agreement. Did the court apply a clear and convincing standard? So the court applied a clear and convincing standard to decide whether the enhancements applied and found that three of the enhancements that the government sought met that standard, but that the enhancement for serious bodily injury did not. And then when it moved on to the 3553 factors, it applied the preponderance of evidence. Do you sense any tension there? There is some degree of not going down the road here, so going down the road around the corner. So in this case, serious bodily injury, the government argued that serious bodily injury occurred for a number of reasons, including the sexual assaults that occurred against BZ that MCR witnessed. And in the end, all we had really supporting that claim was MCR's testimony. But when the court went to the 3553 factors and applied the preponderance of evidence, it did say that it just talked about the exams. And the exams, there was corroborating evidence. There was Monica's interview with law enforcement, which the district court cited. And on their own, perhaps the exams do not get you to serious bodily injury, but they're certainly a part of the conduct that occurred and were properly before the court. And there was corroborating evidence, unlike some of the other allegations that the government put forward in support of its request for the serious bodily harm enhancement. I would just like to briefly address some of the points that appellants made. Regarding Inhell's argument about the childhood, the background of the defendants, the court did not say that that never applies. In fact, the court referenced the sentencing guidelines and the commentary in that guidelines, which says, actually, that it applies in very rare circumstances, only extraordinary cases. And the court simply found that this wasn't such a case. And I would also respond that Miguel's counsel argued that the court, in considering some of the evidence under preponderance of evidence, basically put the time back on. There's no difference. But the court actually stated that if he had found that enhancement, the defendants would have been looking at sentences of about five years. Without that enhancement, their guidelines range was much lower and their sentence was lower. It's not that they received the same punishment that they would have received, regardless of the enhancement. And regarding the motion to strike portions of the reply brief for Mybea, I would just argue that case law says that you need to raise your arguments in opening brief, and if you don't, they're abandoned. And I would just stand by that and leave it to the court's discretion as to how it wants to handle it. If there are no other questions, I ask that this court affirm. All right. Thank you, counsel. Rebuttal. The court raised the issue of is this really out of the heartland, and I would agree that it's really not that extraordinary, particularly if you factor in. Well, the fact is financial gain isn't extraordinary. I haven't seen many cases, if any, of financial gain in this form. It's not like a coyote being paid off. It's like I got an annuity here in the form of this indentured servant, and I'm going to keep milking her, go to the ATM machine to get money out of her. That's different. Your Honor, it's not even clear that they even recouped their expenses in getting her here. They may have made a bad investment. They may have. That was the device they were using. And it's more, it exploits, they both, both systems exploit. This one exploits in a real continuing way. And it's largely a matter of degree. If you take MCR's word, it was horrible, horrible, but that's not what a lot of the other evidence was. But in any degree, using a young relative as an indentured servant is extraordinary, wouldn't you think? It's certainly wrong. It's illegal to do so. As the government brought this up, Miguel did profess he was acting in part according to God's law, helping a distressed relative. And I got into this with the district court. This was a mixed motive. He's hoping to help a distressed relative, and while he's at it, let's. . . Doing a terrible thing for a religious motive isn't much of an excuse. All sorts of terrible things are being done in the world for religious motives. Well, I won't quarrel with you on that. One other quick point, and that is that the evidence of the physical exams that was brought up, there was zero evidence in the record, zero, to support that Miguel participated or even was aware of that. There was nothing there. And yet the court made that one of the bases for the upward variance as to him. There's nothing there. And also, there should have been a . . . that's a separate crime. A higher standard should have applied, and it didn't. All right. Thank you, counsel. Thank you to all counsel for your arguments in this case. The case just argued is submitted for decision by the court. The final case on calendar for argument is Sanchez-Ochoa v. Campbell.
judges: Rawlinson, Clifton, Freudenthal